This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40432

**KAREN ANNE KOCH; KAREN L. COOK; ROBERT COOK DEEGAN; ROBERT AVERY KOCH; KATHLEEN KOCH CALLENDER; GREGORY RYAN; ENERGY INVESTMENTS, INC.; and WENDI CHAMBERLAIN, Successor Trustee of the STEPHEN P. CHAMBERLAIN TRUST U/T/A DATED JULY 20, 2003,**

     Plaintiffs-Appellees,

v.

**THE DAVID FAMILY OIL AND GAS INTERESTS PARTNERSHIP; BARBARA C. BLUME, as Personal Representative of the ESTATE OF E. BJARNE BLUME, Deceased; KRISTEN L. BLUME, individually and as Successor Trustee of the FRED P. BLUME FAMILY TRUST AND THE GULLVI L. BLUME FAMILY TRUST; BAYSWATER FUND III-A LLC; BAYSWATER FUND III-B, LLC; BAYSWATER FUND IV-B, LLC; BAYSWATER RESOURCES, LLC; BLU-CHIP RESOURCES, LLC; DITTO LAND COMPANY, LLC; ROBBINS FAMILY MINERALS, LP; FALL LAND & CATTLE, LLC; and COLBURN OIL, LP,**

     Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Court Judge**

Gallegos Law Firm
J.E. Gallegos
Santa Fe, NM

for Appellees Karen Anne Koch, Robert Avery Koch, and Kathleen Koch Callender

Holloman Law, LLC
Scotty Holloman
Hobbs, NM

for Appellees Karen L. Cook, Robert Cook Deegan, and Gregory B. Ryan

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Chris H. Killion
Spencer L. Edelman
Albuquerque, NM

for Appellant David Family Oil and Gas Interests Partnership

Cavin & Ingram, P.A.
Scott S. Morgan
Brandon D. Hajny
Albuquerque, NM

for Appellants E. Bjarne Blume, Kristen L. Blume, the Fred
P. Blume Family Trust, the Gullvi L. Blume Family Trust,
and Blu-Chip Resources, LLC

Hinkle Shanor LLP
Andrew J. Cloutier
Jared A. Hembree
Ann Cox Tripp
Roswell, NM

for Appellants Bayswater Fund III-A, LLC, Bayswater Fund III-B, LLC,
Bayswater Fund IV-B, Bayswater Resources, LLC, and Ditto Land

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}**     This case involves competing claims of ownership to an overriding royalty interest in a federal oil and gas lease located in Eddy County in southern New Mexico. The district court granted summary judgment in favor of Plaintiffs Karen Koch, Karen Cook, Robert Cook Deegan, Robert Avery Koch, and Kathleen Koch Callender, Gregory Ryan, Energy Investments, Inc., and Wendi Chamberlain against Defendants the David Family Oil and Gas Interests Partnership, Barbara Blume, Kristen L. Blume, Bayswater Fund III-A, LLC, Bayswater Fund III-B, LLC, Bayswater Fund IV-B, LLC, Bayswater Resources, LLC, Blue-Chip Resources, LLC, Ditto Land Company, LLC, Robbins Family Minerals, LP, Fall Land & Cattle, LLC, and Colburn Oil, LP. We conclude that there are questions of material fact precluding summary judgment against parties in the David chain of title. We also conclude that the district court misapplied New Mexico's

law with regard to "void" versus "voidable" conveyances of real property in the circumstances of this case. We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

**BACKGROUND**

**Parties and Facts**

**{2}** This is an appeal from a consolidated quiet title action. The first complaint was filed by some members of the Koch family in March 2021 asserting full ownership of a 3.375% overriding royalty interest in federal oil and gas lease Serial No. 0243816 (the Lease). In May 2021, Plaintiff Gregory Ryan and others filed a separate quiet title action two months later asserting ownership of a portion of the same royalty interest. Noting that the two actions involved the same property and substantially the same claimants, the parties jointly moved to have the cases consolidated. The order of consolidation was entered in July 2021.

**{3}** For ease of reference we sort the various parties into three groups. Three of the Koch Plaintiffs are the surviving children of Robert and Anne Koch. Two of the Koch Plaintiffs are the surviving children of Anne from her subsequent marriage to William Cook. We refer to them collectively as the Koch Plaintiffs. The David Defendants are entities whose claims derive from assignments initially made by Robert W. David or entities owned by him following his purchase of the overriding royalty interest from the estate of Robert Koch. The David Defendants include the David Family Oil and Gas Interest Partnership, the Bayswater entities, and the Blume Defendants. The Ryan Plaintiffs trace their claim to an assignment made to them by Kathleen Koch Callender and Robert Avery Koch following an assignment to them from Anne's estate.

**{4}** The full history of the creation and subsequent assignments of the Lease is long and complicated. After review of the record and the parties' briefing, we conclude that it is not necessary to recite it in full detail in order to resolve the issues presented on appeal. The parties' competing claims to the overriding royalty interest all start with assignments from the separate estates of Robert and Anne Koch. The district court's summary judgment resolved the case by examining the validity and extent of those root assignments. We will follow suit.[1]

**{5}** It is apparently uncontested that the Lease was first issued to Thomas S. Bowman. Bowman assigned his entire interest in the Lease to Robert Koch, but reserved a "1.125% of 8/8ths" overriding royalty interest. Robert Koch and his wife Anne Koch executed a similar assignment in favor of "Helbing and Podpechan partnership" reserving for themselves a "3.875% of 8/8ths" overriding royalty interest. Robert and Anne Koch assigned "ONE-HALF OF ONE (1/2 OF 1%) PERCENT" of the overriding

---

[1]To the extent those assignments are upheld as valid, the interests of the parties likely will quickly fall into place. The Ryan Plaintiffs appear to have resolved their internal differences by agreement. We cannot—and do not—delve into the competing claims internal to the three general groups we have identified because the district court's summary judgment did not address these issues directly.

royalty interest attendant to the Lease to Janell Corporation. The assignment to Janell was recorded in Eddy County on March 27, 1962. The parties apparently agree that these transactions—both of which occurred in March 1962—left Robert and Anne Koch owning a 3.375% overriding interest in the Lease.

**{6}** Robert and Anne divorced in 1969. The divorce decree left open matters such as the division of property, alimony and child support for later determination. As part of a negotiated agreement resolving the property issues, Robert agreed to convey a "five-eighths (5/8) interest" in certain oil and gas properties, including the Lease. Robert executed an "Assignment of Overriding Royalty Affecting United States Oil and Gas Lease"—a federal BLM form—in February 1970 in which he conveyed "5/8ths of 3%" in the Lease to Anne.[2] There is nothing in the record reflecting that the assignment to Anne was filed with the BLM office in New Mexico or recorded in the Eddy County Clerk's Office. Nor is there any indication in the record proper that the divorce decree was filed with the Eddy County Clerk's Office.

**{7}** Robert died a single man in June 1975. His will was probated in the Denver, Colorado probate court. It is uncontested that Samuel Kumagai was appointed the personal representative of the estate. It is also uncontested that no ancillary probate proceeding was established in New Mexico even though the estate included and sold real estate located within the state. As part of his administration of the estate, Mr. Kumagai sold Robert's overriding royalty interest in the Lease to Robert W. David in June 1977. The assignment to Mr. David purports to convey a 3.125% interest, apparently failing to recognize or take into account the split of the interest with Anne as a result of the divorce.

**{8}** Anne Koch died testate in August 2005 still owning as her separate property the overriding royalty interest she received as part of the divorce from Robert. It is apparently undisputed that the royalty interest in the Lease was not distributed to any individual, but was rather placed in a family trust as part of a residuary bequest. There is nothing in the record indicating that an ancillary probate was opened in New Mexico when Anne's estate was probated.

**{9}** As noted above, all of the parties' claims to ownership of the overriding royalty interest in the Lease flow from these early transactions and events.

**Summary Judgment Motions**

**{10}** The case was decided by the district court on cross-motions for summary judgment. The Koch Plaintiffs filed the first motion, arguing generally that the

---

2The Koch Plaintiffs argued below that the agreement and the BLM conveyance resulted in Anne owning the entire royalty interest. The district court rejected that interpretation of the documents. The Koch and Ryan Plaintiffs requested that the court enter judgment limiting Anne's interest to "5/8ths (1.875%) of the 3.375% overriding interest." We interpret the request to mean that the Koch Plaintiffs have abandoned their prior arguments. In any event, given that the Koch Plaintiffs did not file a cross-appeal on the issue, they cannot challenge it now.

conveyance from Robert Koch's estate was ineffective because—as a result of the divorce settlement agreement—Robert owned no interest in the overriding royalty interest in the Lease when he died, and because, even if he did, as real property, the royalty interest passed directly to James Koch, his named residuary heir under New Mexico law and thus it never became part of the estate subject to conveyance by the personal representative.

{11}    The David Defendants filed three separate responses to the Koch Plaintiffs' motion, though the arguments made by them are in substance just variations on a theme. The Bayswater entities argued that Colorado divorce law controlled the effect of the Koch's divorce and that the Colorado probate law in effect at the time of Robert Koch's death controlled the disposition of his estate, not New Mexico statutes. The David Defendants asserted that in any event, Robert David was bona fide purchaser for value (BFP), and was protected from the minutiae of the statutory arguments because there was nothing in the records of Eddy County that gave notice of any interest Anne might have in the Lease. The David Defendants also argued that the Koch Plaintiffs were barred from asserting their claims on the basis of laches, waiver, and estoppel since they were aware of and approved the sale of the overriding royalty interest by Robert's estate.

{12}    The Blume Defendants filed their own motion for summary judgment arguing primarily that Robert David was a BFP and that status protected him from any challenge to his acceptance of the assignment from Robert Koch's estate. They also argued that the Koch Plaintiffs' acceptance of the benefit of the sale of the royalty interest and their approval of the administration of the estate amounted to a ratification of the personal representative's act in selling the interest.

{13}    In their briefing in response to the David Defendant's arguments opposing summary judgment, the Koch Plaintiffs refined their arguments to assert that Robert David could not qualify as a BFP because there was enough in the BLM records and the Eddy County records to put him on both inquiry and actual notice of Anne's interest in the Lease. In addition, they argued that even as a BFP, Robert David could not acquire any interest through a void assignment. The Koch Plaintiffs argued that the personal representative's assignment was void both because the royalty interest was never in the estate, but also because Mr. Kumagai had no power as a Colorado personal representative to convey New Mexico real property unless an ancillary probate was opened in New Mexico.

{14}    After conducting a hearing on the motions, the district court entered an order granting the Koch Plaintiffs' motion, though on grounds not argued by them. The district court's order interpreted the divorce settlement agreement to divide Robert and Anne's interest in the Lease "in a 5/8ths-3/8ths manner." The order also concluded that the assignment of the royalty interest from the Colorado personal representative to Robert David was void because there was no ancillary probate undertaken in New Mexico, citing *Allen v. Amoco Production Co.*, 1992-NMCA-054, 114 N.M. 18, 833 P.2d 1199. The district court decided that Robert David "was on actual notice, as a [BFP], that the

assignment was taken from a [personal representative] who was only appointed in Colorado probate and who was not appointed as the [personal representative] in an ancillary probate in the state with proper jurisdiction." The district court also concluded that Robert Koch's 3/8ths interest in the Lease "remains parked in the estate of Robert Koch" and "[a]ll subsequent assignments are of no effect." We note that these last two aspects of the district court's ruling were not mentioned—much less requested or argued—by the parties below.

## DISCUSSION

**{15}** It is a commonplace observation that summary judgment is not favored in New Mexico. *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126. Summary judgment is appropriate only when there are no genuine issues of material fact and the facts in the record entitle the movant to judgment as a matter of law. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. On appeal, this Court's standard of review is de novo, examining the record in the light most favorable to support trial on the merits. *Woodhull*, 2009-NMCA-015, ¶ 7. The party requesting summary judgment must initially make a prima facie showing of entitlement to judgment. *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 33, 416 P.3d 264. In order to determine whether a party has demonstrated an entitlement to judgment, we must look to the substantive law governing the dispute. *Id.*

**{16}** Applying these basic principles, we perceive at least two errors in the district court's decision. First, there is nothing in the record supporting the decision that Robert David was on "actual" notice that Mr. Kumagai was only appointed in Colorado. The parties' listings of undisputed facts did not mention Mr. David's understanding of Mr. Kumagai's status. The briefing below did not argue that Mr. David knew he was dealing with the Colorado probate proceeding only; nor did any party assert that Mr. David knew or appreciated—or should have known or appreciated—that an ancillary proceeding was needed and had not been established in New Mexico. The Koch Plaintiffs mentioned the lack of an ancillary probate in New Mexico in their reply brief in support of their motion for summary judgment, but the brief makes no assertion that Mr. David's BFP argument was affected by that circumstance. The Koch Plaintiffs did not mention the one document in the record that might bear on the question: the assignment document conveying the interest to Mr. David. The document is not illuminating. It simply describes the assignor as the "Estate of Robert Koch, deceased, by Samuel Kumagai, Personal Representative." It does not specify the jurisdiction or the court handling the probate case. Absent some other information in the record, we fail to see how the document could support the district court's decision. Given the lack of evidentiary support in the record, the district court's decision is simply speculative as a factual matter and unsupportable as a legal conclusion in the context of a summary judgment proceeding.

**{17}** It is frankly difficult to see how Mr. David's knowledge—or lack of knowledge—about the absence of an ancillary proceeding would factor into a determination of his status as a BFP. One possibility is that such knowledge, coupled with a personal belief

that the absence of an ancillary proceeding meant that the assignment was absolutely void—and thus fraudulent—would undermine the good faith aspect of BFP status. But, the record here is devoid of any indication or assertion that Mr. David or Mr. Kumagai were acting in bad faith or with fraudulent intent.

**{18}** The second error we perceive in the district court's decision is its interpretation and use of *Allen*, 1992-NMCA-054. The facts in *Allen* are superficially similar to this case, but there are crucial differences that limit the effect and meaning of its holding. *Allen* involved an internal family conflict over royalties and other payments from an oil and gas property owned by James Allen. *Id.* ¶¶ 2, 3. The income producing property was located in San Juan County in New Mexico. *Id.* ¶ 2. Mr. Allen died in Colorado and his will was probated in Colorado. *Id.* There was no ancillary proceeding started in New Mexico. *Id.* Mr. Allen's will left his property to his relatives, including one of his sons—Osborn Allen. Osborn was named executor of the will. *Id.* The will granted the executor the power to dispose of real property as necessary to settle the estate. *Id.* After he was appointed executor, Osborn and his wife—the plaintiff in the case—purchased the royalty interest, plus a related stream of income from the property, from the estate for themselves. *Id.* Osborn issued an executor's deed to himself and his wife in July 1974. *Id.* Osborn died shortly after executing the deed to himself and his wife. *Id.*

**{19}** The opinion in *Allen* does not explain what prompted Osborn's wife to file her quiet title action, though we can assume that it was prompted by the producing entity's decision to stop paying royalties until a dispute about the rightful payees was determined by a court. *Id.* ¶ 1. The district court ruled in favor of the other heirs named in Mr. Allen's will. *Id.* ¶ 2. On appeal, the plaintiff made clear that her theory for reversal on appeal was limited to the provision of the will granting the executor the power to sell properties. *Id.* ¶ 4. She did not rely on the Colorado probate appointment of Osborn as executor. *Id.* In addition, the plaintiff did not rely on the notion that the deed she received could be relied upon to provide color of title for purposes of an adverse possession action. *Id.*

**{20}** The opinion in *Allen* makes no mention of any argument by the plaintiff that she should be considered a BFP as a way to avoid the problem caused by the invalid executor's deed. It is, of course, obvious why she did not make a BFP-based argument: she could not claim to be an innocent third party purchaser given that she and Osborn engaged in self-dealing when they purchased the interests from the estate. *Id.* ¶ 2.

**{21}** The factual and legal context of *Allen* limit its holding essentially to its facts. Because the plaintiff did not rely on BFP concepts, this Court appropriately did not consider whether the executor's deed could effectively transfer title to a BFP even if it was an "invalid" instrument. That theory could only have been asserted by a third party assignee—such as Mr. David and his assignees in this case. New Mexico case law is clear that a "void" or voidable deed can serve to convey title to a BFP. *See State ex rel. State Tax Comm'n v. Garcia*, 1967-NMSC-098, ¶¶ 3, 4, 77 N.M. 703, 427 P.2d 230 (discussing the difference between voidable and void instruments and holding that deeds not fraudulent on their face though cancellable by the state did not defeat a claim

by a BFP); *In re Last Will & Testament of Welch v. Welch*, 2021-NMCA-028, ¶¶ 49-53, 493 P.3d 400 (holding that a void heirship proceeding did not invalidate a conveyance to a BFP third party); *Jeffers v. Doel*, 1982-NMSC-116, ¶ 7, 99 N.M. 351, 658 P.2d 426 (noting that NMSA 1978, § 14-9-3 (1923, amended 1990) protects BFPs even if a conveyance was void under NMSA 1978, § 40-3-13(A) (1975, amended 1993)). To the extent that the district court relied on *Allen* to mean that an invalid personal representative's deed cannot convey anything that a BFP can rely on, it misread the case.

{22}　In sum, the Koch Plaintiffs did not make a prima facie showing of entitlement to summary judgment. There are no facts in the record—disputed or undisputed—supporting the district court's finding and conclusion that Mr. David had "actual" knowledge about any aspect of the Koch estate proceeding. Thus, Mr. David's status as a BFP is unresolved and cannot be resolved on the record before us. We thus reverse all aspects of the district court's final judgment in favor of Plaintiffs Koch and Ryan flowing from its decision that Mr. David was not a BFP. We leave it to the parties to determine how they will litigate the issue of Mr. David's BFP status on remand. On remand, the district court is free to resolve pending claims and pending or future motions in any appropriate legal manner that is not inconsistent with this opinion's central determination that there are no undisputed material facts in the record at this time justifying a conclusion as a matter of law that Mr. David was not a BFP in this case. Because no one appealed from the district court's judgment quieting title to a 1.875% overriding interest in the Lease in the Koch and Ryan Plaintiffs, we affirm that portion of the judgment.

## CONCLUSION

{23}　In accordance with our discussion above, we affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

{24}　**IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation.**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**